# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **DANIEL EDWARD COSTELLO,** | § | |
| **ET AL.,** | § | |
| *Plaintiff* | § | |
| | § | **No.  1:25-cv-1263-ADA** |
| **v.** | § | |
| | § | |
| | § | |
| **TROPICAL PARADISE d/b/a** | § | |
| **COOL TROPICS,** | § | |
| *Defendant* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE ALAN D. ALBRIGHT
       UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Tropical Paradise d/b/a Cool Tropics' ("Cool Tropics") motion to dismiss, Dkt. 6, and all related briefing. After reviewing these filings and the relevant case law, the undersigned recommends that the District Judge **DENY** the motion.

## I.    BACKGROUND

This is a breach-of-contract case. Plaintiffs Daniel Edwards Costello, Brian Seth Goldberg, and Timothy Richard Prager ("Plaintiffs") allege that Cool Tropics breached the identical agreements under which Plaintiffs served as members of a Strategic Advisory Board ("SAB") for a new company "to be formed … once financing efforts have succeeded." Dkts. 1, at 6-14; 1-2, at 2; 1-3, at 2; 1-4, at 2. The agreements, which were executed in 2013, called for Plaintiffs to support the formation of the new company, Cool Tropics RiPS, in exchange for future compensation. Dkts. 1-2; 1-3; 1-

1

4. Plaintiffs' obligations as SAB members were "informal and unstructured," but included tasks such as "[p]rovid[ing] feedback on RiPS' business plans, investor presentations, and marketing material" as well as "[m]ak[ing] introductions" to potential investors," and "[o]ffering informal coaching and strategic business advice on an as-need basis[.]" Dkts. 1-2, at 2; 1-3, at 2; 1-4, at 2. In exchange, Plaintiffs would be remunerated in the form of deferred-cash compensation or stock options, as well as the opportunity to purchase shares in the RiPS venture at a discounted price, upon "the closing of a qualified Series A investment." Dkts. 1-2, at 2-3; 1-3, at 2-3; 1-4, at 2-3.

Plaintiffs allege that since 2013 and until at least 2022, they have "played integral roles in shaping [Cool Tropics'] growth, direction, and decision-making during its formative and scaling phases" by "provid[ing] high-impact, multi-dimensional guidance to" Cool Tropics and its president, Frank Massabni. Dkt. 1, at 4. In 2025, however, Plaintiffs learned that Cool Tropics had "very recently closed a major investment transaction with Peterson Brands" and inquired as to their promised compensation under the SAB agreements. *Id.* at 8, 11, 13. In response, Massabni asserted that Cool Tropics did not owe anything to Plaintiffs under the agreements but "offer[ed] to buy Plaintiffs a steak dinner at some unspecified future date." *Id.* at 8. This lawsuit ensued. Plaintiffs allege that the 2025 Peterson Brands transaction was a "qualified Series A investment" under the agreements and that

2

Cool Tropics breached the agreements by failing to offer Plaintiffs the benefits owed to them in the event of such an investment. *Id.* at 8, 11, 13.[1]

Cool Tropics moved to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs failed to adequately allege their own performance under or Cool Tropics' breach of the agreements, and that in any event, Plaintiffs' claims are time barred. Dkt. 6, at 12-18. Plaintiffs opposed Cool Tropics' motion, responding that they sufficiently alleged their claims and brought them within the applicable statute of limitations. Dkt. 9, at 7-15.

## II.    LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter,

---

[1] Plaintiffs joined their claims in this lawsuit because they "all arise out of the same transaction or series of transactions" and "involv[e] common questions of fact and law including, without limitation, the interpretation of the substantially identical material terms of each Plaintiff's agreement with Cool Tropics." Dkt. 1, at 3.

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III.   DISCUSSION

Cool Tropics argues that the breach-of-contract claims should be dismissed because: (1) Plaintiffs have not plausibly alleged their performance under the SAB

agreements; (2) Plaintiffs have not adequately alleged any breach of the agreements; and (3) the claims are time barred since they relate to contracts whose terms ended in 2015. Dkt. 6, at 12-18. To plead a claim for breach of contract under Texas law, Plaintiffs must allege: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

### A.     Plaintiffs have adequately alleged their performance under the agreements.

Cool Tropics first argues that Plaintiffs did not sufficiently allege that they performed under the SAB agreements. Dkt. 6, at 12-14. Cool Tropics contends that Plaintiffs failed to plead that they "raised any money or secured any investors in support of RiPS," and that any allegations as to the services they did provide under the agreement are "too conclusory to support their claims" or pertain to performance rendered after the contract term. *Id.* Plaintiffs respond that their complaint is "replete with allegations" of their performance. Dkt. 9, at 10-12. In reply, Cool Tropics faults the complaint for failing to specifically identify how Plaintiffs took specific actions to  raise money for "the Cool Tropics RiPS product." Dkt. 11, at 5-9.

Under the contracts, Plaintiffs agreed to: (1) "[p]rovide feedback on RiPS' business plans, investor presentations, and marketing material"; (2) "[m]ake introductions to other potential SAB members and potential employees"; (3) "[m]ake introductions to potential investors"; (4) "[m]ake introductions to potential industry

partners"; and (5) "[o]ffer informal coaching and strategic business advice on an as-needed basis[.]" Dkt. 1-2, at 2; 1-3, at 2; 1-4, at 2.[2] In their complaint, Plaintiffs allege that they "participated in personal or telephonic meetings with" Cool Tropics' president, Massabni, which "in the early years typically were held monthly and then as [Cool Tropics] matured, on an as-needed basis." Dkt. 1, at 4. Plaintiffs also detail the types of strategic business guidance they provided to Cool Tropics, such as "shaping [Cool Tropics'] retail expansion plans," providing support around capital planning, and providing "legitimacy to the founder's vision" by lending their names to "investor decks, sales presentations, and marketing materials." *Id.* at 4-6.

Such allegations are sufficient to plead Plaintiffs' performance under the contracts. *Cuvillier*, 503 F.3d at 401 ("To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations[.]'" (quoting *Twombly*, 550 U.S. at 555)); *Marc Ellman, MD., P.A. v. MDOffice LLC*, No. EP-21-CV-290-DB, 2022 WL 980640, at *5 (W.D. Tex. Mar. 31, 2022) ("[T]he federal pleading standard does not require Plaintiffs to plead each element of a claim in detail to survive a motion to dismiss[.]"); *Int'l Pecans, LLC v. Ultra Trading Int'l Corp.*, 764 F. Supp. 3d 527, 536 (W.D. Tex. 2025) (finding that plaintiff "plausibly alleged that it tendered performance under the contract" where it alleged that "the parties agreed for International to deliver pecans to Ultra on five occasions, and that International successfully performed this obligation"); *Shintech Inc. v. Olin Corp.*, 723 F. Supp. 3d

---

[2] The undersigned may consider the agreements in resolving the motion to dismiss because they were referenced in and attached to Plaintiffs' complaint and are central to their claims. Dkts. 1, at 6-15; 1-2; 1-3; 1-4; *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

546, 551 (S.D. Tex. 2024) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." (citing Fed. R. Civ. P. 9(c))). Cool Tropics' insistence that Plaintiffs' complaint is deficient because they did not allege "when these meetings took place, when these meetings changed to on an 'as-needed' basis, or for how long the meetings occurred" thus seeks to hold Plaintiffs to a higher standard than that required by Rule 8. Dkt. 6, at 13.[3]

Moreover, and as discussed below, while the agreements set forth a vesting period over a course of 24 months for compensation and Massabni expressed his "hope [that] we are able to close on an investment before two years passes," nothing in the contracts explicitly limits the term of the contract to two years, as Cool Tropics suggests. Dkts. 1-2, at 3; 1-3, at 3; 1-4, at 3. Finally, while Cool Tropics is certainly correct that Plaintiffs must plead their performance since "a party to a contract who is [herself] in default cannot maintain a suit for its breach," the undersigned notes that Cool Tropics included no case law supporting its position that Plaintiffs' allegations as to their own performance are deficient. Dkt. 6, at 13-15 (citing *BigCommerce, Inc. v. Cover Genius Warranty Servs., LLC*, No. 1:23-CV-298-DAE, 2023 WL 7413360, at *2 (W.D. Tex. July 18, 2023); *Villarreal v. Wells Fargo Bank,*

---

[3] Cool Tropics' further argument that Plaintiffs' failure to allege that they secured financing for the RiPS business is fatal to their claims because that was the "express purpose" of the agreements is not well taken given that the agreements contemplated that Plaintiffs would also serve Cool Tropics by "[p]rovid[ing] feedback on RiPS' business plans, investor presentations, and marketing material" and "[o]ffer[ing] informal coaching and strategic business advice on an as-needed basis[.]" Dkts. 1-2, at 2; 1-3, at 2; 1-4, at 2; 6, at 12-13.

*N.A.*, 814 F.3d 763, 767 (5th Cir. 2016)).[4] Plaintiffs have sufficiently alleged their performance under the agreements.

> ### B.    Plaintiffs have adequately alleged Cool Tropics' breach of the agreements.

Cool Tropics next argues that Plaintiffs failed to sufficiently allege Cool Tropics' breach of the contracts because it had no obligation to compensate Plaintiffs based on the 2025 Peterson Brands acquisition since that transaction did not relate to the RiPS venture and occurred outside the two-year term of the agreements; Cool Tropics also argues that it did not need to close a Series A investment under the agreements. Dkt. 6, at 14-17. Plaintiffs respond that they have sufficiently alleged that, under the agreements, Cool Tropics was required to compensate Plaintiffs upon the closing of a qualified Series A investment, which occurred when Cool Tropics closed a major investment transaction with Peterson Brands in 2025. Dkt. 9, at 13-14. In reply, Cool Tropics insists that Plaintiffs' allegation that the 2025 Peterson Brands transaction was a "qualified series A investment" under the agreement is "conclusory" and should not be credited. Dkt. 11, at 9.

Plaintiffs alleged that Cool Tropics breached the SAB agreements by failing to provide them with their vested compensation and notify them of their right to obtain shares at a discounted rate following the 2025 Peterson Brands transaction, which Plaintiffs allege was a "qualified Series A investment" within the meaning of the

---

[4] In *Villarreal*, for example, the Fifth Circuit affirmed the dismissal of a breach-of-contract claim where plaintiff "failed to allege any facts showing her own performance and did not refute the facts in documents referred to in her complaint" that demonstrated her default. 814 F.3d at 767.

agreements. Dkt. 1, at 8, 11, 13. In the alternative and "only to the extent the financing transaction that Cool Tropics closed in or around April of 2025 is not deemed to be a 'Series A investment' within the meaning of the" agreements, Plaintiffs claim that Cool Tropics breached the agreements by failing to close on such an investment. Dkt. 1, at 8-9, 11, 13-14.[5]

The undersigned finds that Plaintiffs' allegations that Cool Tropics breached the agreements by failing to offer Plaintiffs the benefits promised to them under the agreements upon the closing of a qualifying transaction are sufficient to state Cool Tropics' breach of the agreements. *See id.*; *AHBP LLC v. Lynd Co.*, 649 F. Supp. 3d 371, 399-400 (W.D. Tex. 2023) ("[F]airly generic allegations as to the nature of the breach can satisfy the pleading requirements under Rule 8(a)." (citing *Innova Hosp. v. Blue Cross & Blue Shield of Ga.*, 892 F.3d 719, 732 (5th Cir. 2018))); *Scarbrough v. JPMorgan Chase Bank, N.A.*, No. 4:21-CV-3760, 2022 WL 2373725, at *5 (S.D. Tex. June 2, 2022), *R. & R. adopted*, No. CV H-21-3760, 2022 WL 2359645 (S.D. Tex. June 30, 2022) (noting that plaintiff need only "identify the specific provision breached and

---

[5] Because the undersigned finds that Plaintiffs have stated claims for relief based on the factual allegations regarding Cool Tropics' obligation to pay them based on the 2025 Peterson Brands acquisition, the undersigned does not reach Cool Tropics' argument for dismissal of Plaintiffs' alternative factual basis for their claims. *Perkins v. United Surgical Partners Int'l, Inc.*, No. 23-10375, 2024 WL 1574342, at *5 (5th Cir. Apr. 11, 2024) ("[B]ecause we conclude the allegations concerning the classes of shares offered and recordkeeping costs support a plausible duty of prudence claim, we need not address whether these other allegations also support a claim for which relief can be granted." (citing Fed. R. Civ. P. 8(d)(2)). Cool Tropics' cited cases do not support the dismissal of certain facts supporting a claim where the claim otherwise survives a motion to dismiss given that those cases involved the wholesale dismissal of claims—not the dismissal of alternative factual bases for a claim that otherwise has sufficient factual support. Dkt. 11, at 10 (citing *Mayo v. Halliburton Co.*, No. H–10–1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010); *VDPP, LLC v. Gen. Motors Co.*, No. 1:23-CV-00956-RP, 2024 WL 4958307, at *1 (W.D. Tex. July 22, 2024)).

allege enough facts to plausibly infer how it was breached" to state claim for breach of contract under Texas law (citing *Guajardo v. JP Morgan Chase Bank, N.A.*, 605 F. App'x 240, 244 (5th Cir. 2015))).

The undersigned thus rejects Cool Tropics' bid to dismiss the breach-of-contract claims based on the "conclusory" nature of Plaintiffs' allegations that the 2025 Peterson Brands transaction qualified Plaintiffs for compensation under the agreements; the Plaintiffs need not prove that the transaction was a "qualifying" one under the agreements at this time. *Bartee v. Harris Cnty.*, No. 4:16-CV-2944, 2018 WL 8732519, at *5 (S.D. Tex. Mar. 5, 2018) ("At the motion to dismiss stage, Plaintiff is not required to prove his case."). Cool Tropics' suggestion that the Court reject the allegation because it is "factually untrue" is also unpersuasive as it would require the Court to resolve a factual dispute that is not the proper subject of a motion to dismiss. Dkt. 6, at 16-17; 11, at 9; *Gonzalez v. Int'l Med. Devices, Inc.*, 787 F. Supp. 3d 776, 787 (W.D. Tex. 2025) ("The Court does not resolve any disputed fact issues on a motion to dismiss." (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999))). Moreover, as discussed above, the agreements do not contain any unambiguous two-year term by which the agreements would terminate; the undersigned thus declines to recommend dismissal of the claims on this basis. *See* Dkts. 1-2; 1-3; 1-4. Plaintiffs have sufficiently alleged Cool Tropics' breach of the agreements.

### C.      Plaintiffs' claims are not time barred.

Cool Tropics' final basis for dismissal of Plaintiffs' claims rests on its assertion that the agreements contained two-year terms, concluding in 2015, and as such, Plaintiffs' claims are barred by the applicable statute of limitations. Dkt. 6, at 17-18. Plaintiffs respond that the agreements do not contain a two-year term and Cool Tropics "fails to cite any language stating such a term"; moreover, Cool Tropics' duty to compensate Plaintiffs under the agreement is triggered by the closing of a qualified investment, which Plaintiffs allege occurred in 2025. Dkt. 9, at 14-15. In reply, Cool Tropics once again references the agreements generally without citing any specific language limiting them to a two-year term to support their contention that the Plaintiffs may not bring their claims 12 years after the execution of the agreements. Dkt. 11, at 11.

The statute of limitations for Plaintiffs' breach-of-contract claims is four years from the date the cause of action accrues. Tex. Civ. Prac. & Rem. Code § 16.0051; *Citigroup Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 373 (5th Cir. 2011) ("We apply state statutes of limitations in diversity cases."). A cause of action for breach of contract accrues when the legal injury occurs; accrual thus begins when the contract is breached. *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (explaining that "'[c]ontract claims generally accrue when the contract is breached'" (quoting *Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex. App.—Dallas 1992, writ denied))); *see also Ellis-Erkkila v. Citibank*, No. W20CV01039ADADTG, 2023 WL 3190843, at *3 (W.D. Tex. May 1, 2023), *R. & R. adopted*, No. 620CV01039ADADTG,

11

2023 WL 5519669 (W.D. Tex. Aug. 24, 2023) ("A legal injury happens when a wrong produces an injury, or one party injures another, even if the injured party does not discover their injuries until after the statute of limitations accrues." (citing *Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003))).

Here, Plaintiffs allege that they discovered Cool Tropics' breach in April 2025, when they learned that it had "very recently closed a major investment transaction with Peterson Brands." Dkt. 1, at 8, 11, 13. Their breach-of-contract claims thus accrued in April 2025 and were brought within the four-year statute of limitations. *See id.* (filed August 8, 2025). Cool Tropics does not address the fact that Plaintiffs' legal injury did not occur until April 2025, instead arguing that Plaintiffs' claims are barred because "the alleged breach did not occur within the contract's term" of two years. Dkt. 6, at 17-18. Notably, Cool Tropics did not point the Court to any specific language in the agreements setting forth a two-year term. Dkts. 6, at 17 (citing "Dkt. 1, Ex. A-C" in support of its argument that the agreements "have a two-year term"); 11, at 11 (citing "Compl., Exs. A-C" in support of its argument that the agreements "have a two-year term"). This is likely because, as discussed above, the agreements do not contain any specific time duration. Instead, the agreements reference Massabni's "hope" that he could close on the investments needed to form the RiPS venture "before two years passes" and set forth a 24-month vesting period applicable to the "option award" that would be provided to Plaintiffs upon such a closing. Dkts. 1-2, at 3; 1-3, at 3; 1-4, at 3.[6] Cool Tropics has not met its burden of demonstrating

---

[6] Moreover, Cool Tropics' argument—raised for the first time in its reply—that the contracts are unenforceable for failing to include a time duration raises an entirely separate issue

that Plaintiffs' claims are barred by the statute of limitations. *Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 254 (5th Cir. 2021) (noting that "'statute of limitations is an affirmative defense for which the [defendant] has the burden of proof'" (quoting *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 486 (5th Cir. 2016))).

## IV. RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **DENY** Cool Tropics' motion to dismiss, Dkt. 6.

## V. WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District

---

unrelated to whether Plaintiffs' claims are time barred. Dkt. 11, at 11 (citing *Cytogenix, Inc. v. Waldrogg*, 213 S.W.3d 479, 486 (Tex. App.—Houston [1st Dist.] 2006, pet denied); *Oakrock Expl. Co. v. Killam*, 87 S.W.3d 685, 691 (Tex. App.—San Antonio 2002, pet. denied)). Neither *Cytogenix* nor *Oakrock* dealt with whether the claims there were time barred.

13

Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED March 5, 2026.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE